# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. ARENDT-WALKER, Minor.

UNPUBLISHED
February 2, 2016

No. 328863
Kalamazoo Circuit Court
Family Division
LC No. 2013-000295-NA

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (*ii*) (other conditions continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm). We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred when it found that the Department of Health and Human Services (DHHS) established statutory grounds for the termination of her parental rights. This Court reviews for clear error a trial court's finding that a ground for termination has been proven by clear and convincing evidence. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

On appeal, respondent does not specify which statutory ground(s) she is challenging. This Court only needs to determine that the petitioner proved any one of the alleged statutory grounds in order for termination of parental rights to be appropriate. MCL 712A.19b(3); *In re Sours (Minors)*, 459 Mich 624, 632-633; 593 NW2d 520 (1999). In this case, we find no clear error in any of the stated grounds for termination.

## A. §19B(3)(C)(*I*)

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) if, after 182 days, "the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." In the instant case, the court took jurisdiction because respondent admitted to the allegation that she placed her child in danger because of exposure to domestic violence. Respondent's continued

involvement in domestic violence during this case, both as a perpetrator and a victim, demonstrated that the conditions that led to adjudication continued to exist. Respondent's child had been in care for approximately two years at the time of the termination hearing, and respondent had demonstrated little, if any, progress in this area of her life. Given respondent's lack of progress, the trial court did not clearly err in determining that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age.

## B. § 19B(3)(C)(*II*)

Termination of parental rights is also proper under MCL 712A.19b(3)(c)(*ii*) if:

[o]ther conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In the instant case, respondent's substance abuse problem persisted despite two years of services. In April 2015, a mere two months before the termination hearing, respondent was arrested in Wisconsin for driving under the influence. Authorities detected alcohol, cocaine, and opiates in her system. Additionally, respondent told her caseworker that she could not submit drug screenings in May and June of 2015 because she had no identification after her arrest. This demonstrated that respondent's longstanding substance abuse issues were unresolved. And there was no reasonable likelihood that the conditions would be rectified within a reasonable time, considering the child's age. In fact, in December 2014, the trial court agreed to give respondent three extra months to show she could comply with and benefit from services, yet respondent continued to use substances after this date. Accordingly, the trial court did not clearly err when it determined that termination of parental rights was proper under MCL 712A.19b(3)(c)(*ii*).

## C. § 19B(3)(J)

A trial court may also terminate parental rights if it finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). In this case, there was ample evidence that there was a reasonable likelihood that the child would be harmed if returned to respondent. Respondent's above-mentioned substance abuse and involvement in domestic violence demonstrates that her child would be at risk of harm if returned to her care. Given these considerations, the trial court did not err when it determined that termination of parental rights was proper under MCL 712A.19b(3)(j).

## D. § 19B(3)(G)

Termination of parental rights is also appropriate where a parent "fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Without being able to demonstrate that she was drug-free and could maintain

stable housing and employment, respondent was unable to provide proper care and custody of her child, thereby making termination of parental rights appropriate under MCL 712A.19b(3)(g). Respondent's caseworker described her housing situation as "extremely unstable" and noted that respondent was "basically couch-hopping" throughout the case. At the time of the termination hearing, respondent was living at a domestic violence shelter. Respondent argues that she would soon secure housing through her participation in a program that would pay her rent at an apartment for two years. Respondent secured this service one day prior to the termination hearing. Thus, respondent's ability to maintain stable housing was unproven at the time of the termination hearing. The trial court did not clearly err when it found that it would have to make a "leap of faith" that respondent would be able to maintain her place in the housing program over the long term given that "various opportunities for housing from family members have not gone well" throughout the case. And, even crediting respondent for obtaining a place in the housing program, there was nevertheless evidence of her inability to provide proper care and custody because of her lack of progress in other areas, such as her continued substance abuse.

Respondent argues that she made progress and secured many services, albeit in the timeframe immediately before the termination hearing, and needs more time to demonstrate benefit from services. However, this case had been ongoing for approximately two years at the time of the termination hearing, and respondent only demonstrated an appreciable level of progress in some areas immediately before the termination trial. The trial judge previously delayed the case by three months to give respondent more time to benefit from services. Despite this leniency, the caseworker reported that there were "no changes" and "essentially no progress" during those three months. Thus, respondent already failed to make use of additional time provided to her by the trial court. And, again, while respondent made progress in *some* areas, she failed to make progress in other areas. Most notably, she was arrested for operating while intoxicated and tested positive for multiple controlled substances mere months before the termination hearing. On this record, the trial court did not clearly err when it determined that respondent's potential success in securing housing and other services immediately before the termination hearing was insufficient.

## II. BEST INTERESTS

Respondent also argues that the trial court erred when it found that termination was in the child's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . .." MCL 712A.19b(5). When making a best-interest determination, the court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). We review a trial court's decision regarding a child's best interests for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

Respondent argues that the trial court failed to consider that respondent secured two years of paid housing and was working with the DHHS to secure a car, food stamps, and cash

assistance. However, the trial court specifically referenced respondent's last-minute efforts at securing these services:

> There's been very little, if any, compliance with the service plan. Basically, mother's been going through the motions; and, then, at the-literally the last minute, there seems to be some forward progress and some efforts. Had those efforts been long-term, been consistent, the Court would be able to tolerate even some backsliding. But, when, literally, within hours of a hearing, getting letters talking about stability of housing and putting services in place, it becomes too little, too late to use the vernacular.

Thus, respondent's argument that the trial court erred by failing to consider those services is unavailing. Additionally, the trial court made lengthy and detailed findings of fact regarding the child's best interests. The court specifically made findings that respondent's parenting ability and bond with the child lessened over time because of inconsistent parenting time visits. The court further found that the child was in need of permanency, stability, and finality after having spent a significant part of her life under the court's watch. The record supports these findings, and we cannot conclude that the trial court clearly erred when it found that termination was in the child's best interests.

## III. REASONABLE EFFORTS AT REUNIFICATION

Finally, respondent argues that the DHHS made insufficient efforts to reunify her with her child. This issue is unpreserved because respondent did not raise it at the time the court adopted the services plan. See *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). We review unpreserved issues for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011).

The issue of whether reasonable services were offered to a respondent ultimately relates to the issue of sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan. MCL 712A.18f(1), (2), and (4). See also *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). In this case, respondent received services from the DHHS including a psychological assessment, drug screens, counseling services, supervised parenting time, a referral to Narcotics Anonymous, a referral to Housing Resources, Inc., mental health services for her child, and a referral to the CARING Network for pregnant mothers. Thus, it is clear that the respondent received numerous reunification services.

Respondent's argument focuses on the fact that there were multiple caseworkers over the course of her involvement with the DHHS. Nevertheless, there is no indication that caseworker turnover prevented the DHHS from offering reasonable services to respondent. Respondent also contends that she was unfairly criticized for failing to inform her Kalamazoo County caseworker about the services she was receiving by working with the DHHS in Allegan County. However, this argument fails to elucidate how the DHHS allegedly failed to provide respondent with reasonable services. Respondent further argues that the DHHS failed to provide reasonable services because a caseworker expected her to find a substitute counselor after her own counselor

went on maternity leave. Respondent acknowledges that she did eventually find another counselor. Even if it was improper for the DHHS to expect respondent to find her own substitute counselor, no prejudice affecting substantial rights is demonstrated because respondent located another counselor. Finally, respondent contends that the DHHS did not provide reasonable services because the DHHS could not locate two of respondent's drug screenings. However, the record reveals that the DHHS could not see the results of those screens because respondent submitted them to the wrong testing facility. The caseworker attributed respondent's actions to a "miscommunication." In any event, no prejudice affecting substantial rights exists because respondent's arrest for driving under the influence and the report that she had alcohol, cocaine, and opiates in her system at the time demonstrated that she struggled with substance abuse. Indeed, this arrest occurred after the drug screens noted above were lost.

Affirmed.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly